IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONTANA BELL, | : | |
| Plaintiff | : | No. 3:19-CV-1226 |
| | : | |
| v. | : | Judge Brann |
| | : | |
| C.O. FOUNTAIN, C.O. MISTI, C.O. BOONE, C.O. HARIG, SGT. WEIS *and* LT. GILDEA, | : | Electronically Filed Document |
| Defendants | : | |

**DEFENDANTS' BRIEF IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff, Montana Bell, a *pro se* inmate, brings this action against six Defendants[1] in connection with his incarceration at the State Correctional Institution at Camp Hill ("SCI-Camp Hill") in 2017. Bell alleges that Defendants used excessive force in connection with escorting him from a psychiatric observation cell ("POC") to his cell on E Block after he refused to enter it despite command. Once this Court pulls back the curtain Bell's story it will be clear that no constitutional violation or other viable claim exists.

---

1. Defendants are current employees of SCI-Camp Hill, including, Lt. Robert Gildea, Sergeant Jared Weis, and Officers Zachary Fontaine, Dustin Misiti, Robert Harig, and Benjamin Boone.

This brief in support of summary judgment identifies that there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law. Accordingly, Defendants request that judgment should be entered in their favor and Bell's claims be dismissed.

## II. RELEVANT PROCEDURAL HISTORY

Bell filed a civil complaint in the Court of Common Pleas of Dauphin County, Pennsylvania on June 18, 2019. [Doc. 1] Defendants removed the action to this Honorable Court and filed an Answer and Affirmative Defenses on July 24, 2019. [Doc 2]

A discovery order was entered on December 30, 2019. [Doc. 9] Bell filed a motion for summary judgment on April 14, 2020. [Doc. 10] The deadline for responding to Bell's motion for summary judgment and filing Defendants' motion for summary judgment is July 21, 2020, as extended by the Court at the request of Defendants. [Doc. 17]

## III. STATEMENT OF FACTS

### A. Facts Alleged In the Complaint

On March 8, 2017, Bell was incarcerated at SCI-Camp Hill. [Doc. 1, ¶ 4] On that day, Bell alleges that he was escorted from the POC to his cell in E-Block on by Security Defendants Fontaine, Misiti, Harig and Gildea. [Doc. 1, ¶ 15] Bell "froze" and stopped in place directly in front of the cell refusing to go into it. [*Id*.,

¶ 17]  Bell alleges he did so because he was upset when he noticed that his personal belongings were not in his cell.  [*Id.*, ¶ 16]

Bell alleges he was "immediately assaulted" by Security Defendants Fontaine, Misiti, and Gildea who he claims "started jumping and beating him maliciously and sadistically to cause serious harm".  [*Id.*, ¶¶ 17-18]  Bell alleges that he "was screaming out in pain telling them to stop [when] Defendants Boone and Harig joined in with the assault by kicking, punching and pulling his hair by the root".  [*Id.*, ¶ 19]  This all, according to Bell, took place against the wall and on the bed of his cell.  [*Id.*, ¶¶ 18, 20-21]  Bell further alleges that he requested medical treatment which was denied.  [*Id.*, ¶24]  He claims he received a cut under his eye as result of the incident.  [*Id.*, ¶32]

Bell received a misconduct written by Defendants Fontaine, Misiti alleging that Bell assaulted Defendants by kicking them in their legs.  [*Id.*, ¶25]  Bell filed a grievance, number 670750, to report the alleged assault.  [*Id.*, ¶¶23, 27]

Bell brings this action against each of the Defendants in their official and individual capacities.  [*Id.*, ¶11]  Bell is seeking declaratory, compensatory and punitive damages against each Defendant jointly and severally.  [*Id.*, ¶¶44-49]

## B.  Investigation of the Incident

While Bell paints a vivid picture of the use of force by Defendants, when Bell's allegations were investigated by prison officials it was determined that the

use of force was reasonable and necessary to secure Bell in his cell after he refused to enter it and became aggressive with staff.

Each use of force incident is documented within a DC-121. Part of the DC-121 is a report of the incident completed by each employee.[2] Additionally, the digital handheld video footage of the incident operated by Sergeant Weis captures the events within Bell's cell from approximately 10:41am to 11:02am.[3]  The video footage shows Defendants Fontaine, Misiti, Harig, and Gildea in or just outside Bell's cell with clear audio from Bell and said Defendants.

From these reports and the video footage we learn that upon arriving at cell D1013 from the POC, Bell refused to enter the cell and became aggressive turning on staff.  [Ex A., 000002-5, 16]  To gain compliance, Bell was restrained on the bed with shackles applied.  [Ex A., 000016, 27; Ex. B].  When the shackles were removed, Bell continued to be aggressive and non-compliant and was placed onto the wall to maintain control. [Ex A., 000002-5, 16, 27]   Once he was up against the wall, Bell continued to be aggressive, resisted compliance and assaulted staff by kicking Defendants Fontaine and Misiti who were attempting to restrain him.

---

[2]  Attached and incorporated herein, as Exhibit A, is the DC-121 contemporaneously completed after the use of force incident described in this complaint. This document is identified with bates numbers 000001 – 0074.

[3]  Attached and incorporated herein, as Exhibit B, is the handheld video footage, is identified with bates number 000075.

[Ex A., 000002-5, 16; Ex. B @4:00minutes]   Because Bell kicked Defendants and continued to resist, Defendant Gildea then ordered Bell to be placed on the bed and shackles were applied by Defendant Boone and Officer Alianiello. [Ex A., 000019, 25, 21, 29]   Defendant Gildea radioed for a medical assessment. [*Id*.] Once compliant, Bell was assessed by RN Sunder and PA Taylor who noted a small abrasion on Bell's face near his right temple. [Ex A., 40, 49]   After the assessment was completed, cell D1014 was secured and the restraints were removed without further incident.  [Ex A., 31, 64] Defendant Misiti reported an abrasion on his left forearm.  [Ex A., 35-36, 40, 43, 47]

## IV.   STATEMENT OF QUESTIONS INVOLVED

A. SHOULD BELL'S EXCESSIVE USE OF FORCE CLAIM BE DISMISSED BECAUSE VIDEO EVIDENCE PROVES THE USE OF FORCE WAS APPLIED IN A GOOD-FAITH EFFORT TO MAINTAIN AND RESTORE DISCIPLINE?

B. SHOULD PLAINTIFF'S CLAIM OF CALCULATED HARASSMENT BE DISMISSED BECAUSE IT IS NOT A CLAIM IN AND OF ITSELF APART FROM THE SEPARATE AND DISCRETE ACTIONS BY THE DEFENDANTS?

C. SHOULD PLAINTIFF'S STATE-LAW CLAIMS BE DISMISSED BECAUSE THE POLITICAL SUBDIVISION TORT CLAIMS ACT IS NOT APPLICABLE TO COMMONWEALTH DEFENDANTS, OR ALTERNATIVELY, SHOULD THE COURT DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING CLAIMS?

Suggested Answer to All: Yes.

## V.     ARGUMENT

Summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex*, 477 U.S. at 330. "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). The non-moving party "must present more than just bare assertions, conclusory allegations, or suspicions

6

to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F. App'x 211, 213 (3d Cir. 2010). Further, "when opposing parties tell two different stories, one of which is blatantly contradicted" by a videotape capturing the events in question, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Consistent with the above standards, it is clear that summary judgment should be granted to Defendants on all claims asserted in the Complaint.

### A.  VIDEO FOOTAGE PROVES THE USE OF FORCE WAS APPLIED IN GOOD-FAITH.

Under the Eighth Amendment, inmates are protected against the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The central question in evaluating an excessive force claim is "whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Although the Eighth Amendment protects inmates against cruel and unusual punishment, it "does not protect an inmate against an objectively *de minimis* use of force." *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).

Where, as here, the pertinent events are captured on video, courts should not rely on the parties' characterizations of the events, but rather should view the facts as they are depicted on the videotape. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Summary judgment is appropriate if, viewing the evidence in the light

most favorable to the plaintiff, no reasonable fact finder could view the video of the incident and determine that the defendants acted maliciously and sadistically. *Tindell v. Beard*, 351 F. App'x 591, 596 (3d Cir. 2009).

In making the determination about the application of use of force, courts are tasked with evaluating five factors set forth in *Whitley*. *See* 475 U.S. at 321. The relevant factors for a court to consider are: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. (Id.)

Upon arriving at cell D1013 from the POC, Bell refused to enter the cell and became aggressive turning on staff. [Ex A., 000002-5, 16] To gain compliance, Bell was restrained on the bed with shackles applied. [Ex A., 000016, 27; Ex. B]. When the shackles were removed, Bell continued to be aggressive and non-compliant and was placed onto the wall to maintain control. [Ex A., 000002-5, 16, 27] Once he was up against the wall, Bell continued to be aggressive, resisted compliance and assaulted staff by kicking Defendants Fontaine and Misiti who were attempting to restrain him. [Ex A., 000002-5, 16; Ex. B @4:00minutes] Because Bell kicked Defendants and continued to resist, Defendant Gildea then

8

ordered Bell to be placed on the bed and shackles were applied by Defendant Boone and Officer Alianiello. [Ex A., 000019, 25, 21, 29] Defendant Gildea radioed for a medical assessment. [*Id.*] Once compliant, Bell was assessed by RN Sunder and PA Taylor who noted a small abrasion on Bell's face near his right temple. [Ex A., 40, 49] After the assessment was completed, cell D1014 was secured and the restraints were removed without further incident. [Ex A., 31, 64] Defendant Misiti reported an abrasion on his left forearm. [Ex A., 35-36, 40, 43, 47]

Under the first *Whitley* factor, there was a clear need for the application of force because Bell refused to go into his cell, was acting aggressively to staff and continued to refuse to compliance. Initially, the officers restrained Bell on the bed with shackles which were removed and then Bell was restrained against the cell wall. While against the cell wall, Bell kicked Defendants Fontaine and Misiti who were attempting to restrain him. This could be seen on the video [Ex. B] at the 4:00 minute mark. Because Bell kicked Defendants and continued to resist, Defendant Gildea then ordered Bell to be placed on the bed and shackles were applied by Defendant Boone and Officer Alianiello. Under the second *Whitley* factor, with Bell acting aggressively and kicking staff there was a need to regain control over the Plaintiff and restrain him. The amount of force used was commensurate with restraining Bell and regaining control by staff.

Medical staff evaluated Bell and determined that he received a small superficial cut on the right side of his face under his temple. Under the third *Whitley* factor, the extent of Plaintiff's injuries are *de minimus*. Especially as compared to Defendants reasonably perceived threat to security and the safety of staff members after Bell kicked Defendants Fontaine and Misiti who were attempting to restrain him. Under the fourth *Whitley* factor, an inmate refusing to obey an order and then striking an officer is a reasonably perceived threat based on the facts known at the time. Further, under the fifth *Whitley* factor, Defendants actually used a limited amount of force, placing Plaintiff against the wall and on the bed, in relation to the need for force.

Review of the handheld video also shows Defendants acting in a calm and collected manner. [Ex. B]. Defendants' use of force applied to Plaintiff was the least amount of force necessary in the situation, it was applied in good-faith to maintain and restore discipline, and was not applied maliciously or sadistically to cause harm. As such, Plaintiff's Eighth Amendment claim should be dismissed.

**B.     CALCULATED HARRASSMENT IS NOT AN INDIVIDUAL CLAIM.**

Plaintiff claims that the Defendants inflicted calculated harassment against him because the use of force incident violated Department policy. [Doc. 1, ¶¶ 41-42] In furtherance of the harassment, Defendants filed a false misconduct report, which is also in violation of Department policy. [*Id.* ¶¶ 25, 41-42]

42 U.S.C. § 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States. Section 1983 does not create any new substantive rights, but instead provides a remedy for the violation of a federal constitutional or statutory right. *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000).

Allegations that these officers failed to follow Department policies cannot support a claim based upon a vested right or duty because these policies or regulations, unlike statutory provisions, "do not create rights in prison inmates." *Tindell v. Dep't of Corr*, 87 A.3d 1029, 1035 (Pa. Commw. Ct. 2014); *accord Glenn v. DelBalso,* 599 F. App'x. 457, 459 (3d Cir. 2015). Because Department polices do not create substantive rights, Section 1983 cannot impose liability against the Defendants and Plaintiff's claim fails.

Additionally, calculated harassment is not a claim in and of itself apart from the separate and discrete actions by the Defendants. *See Watson v. Gill*, No. 17-0545, 2018 WL 5044229, *3 (W.D. Pa. Oct. 17, 2018). While Plaintiff may assert an individual claim for excessive force he is not entitled to relief based on the cumulative effect of Defendants' actions that gave rise to the individual claim. *Id.*

Because calculated harassment is not a claim in and of itself, Plaintiff's calculated harassment claim should be dismissed as a matter of law.[4]

## C.   REMAINING STATE LAW CLAIMS SHOULD BE DISMISSED.

Plaintiff also asserts state-law claims of assault and battery, negligence, and negligent infliction of emotional distress against Defendants. [Doc. 1, ¶¶ 32-35] Plaintiff claims that he is authorized to bring these claims pursuant to the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §§ 8541-8564.

However, the Political Subdivision Tort Claims Act is only applicable to local agencies or employees. *See* 42 Pa.C.S.A. § 8541. Even if Plaintiff's complaint were liberally construed, 28 U.S.C. § 1367(c)(3) confers discretion on federal district courts to decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." When exercising this discretion, a district court should not retain supplemental jurisdiction over any remaining state-law claims "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

---

[4] To the extent Plaintiff purports to state a claim for "campaign retaliation harassment" under the First Amendment [Doc. 1, ¶38], that claim fails as a matter of law.  To the extent this purported claim is premised on alleged retaliation for filing a grievance, the only grievance Plaintiff attaches as evidence to support his claim is Grievance #670750 which was filed on March 24, 2017, 16 days <u>after</u> the incident to which Plaintiff complains of.  [Doc. 13, "B" 1]  There is no retaliation for filing of grievance that was not in existence at the time of the incident.

Defendants assert that if this Court decides not to dismiss Plaintiff's remaining state-law claims, it should decline to exercise supplemental jurisdiction over them once the decision is made to dismiss all federal claims.

## VI.  CONCLUSION

Defendants respectfully submit that this Honorable Court should deny Plaintiff's motion for summary judgment, dismiss Plaintiff' Complaint in its entirety, and grant Defendants summary judgment with prejudice.

                **Respectfully submitted,**

                **JOSH SHAPIRO**
                **Attorney General**

            **By:**   *s/ Stephen Moniak*
                **STEPHEN MONIAK**
**Office of Attorney General**    **Senior Deputy Attorney General**
**15th Floor, Strawberry Square**  **Attorney ID 80035**
**Harrisburg, PA 17120**
**Phone: (717) 712-2037**    **ALEXANDER T. KORN**
                **Deputy Attorney General**
[smoniak@attorneygeneral.gov](mailto:smoniak@attorneygeneral.gov)

**Date:  July 21, 2020**        **Counsel for Defendants**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MONTANA BELL,** | : | |
| **Plaintiff** | : | **No. 3:19-CV-1226** |
| v. | : | |
| | : | **Judge Brann** |
| **C.O. FOUNTAIN, C.O. MISTI, C.O. BOONE, C.O. HARIG, SGT. WEIS** *and* **LT. GILDEA,** | : | **Electronically Filed Document** |
| **Defendants** | : | |

## CERTIFICATE OF SERVICE

I, Stephen Moniak, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on July 21, 2020, I caused to be served a true and correct copy of the foregoing document titled Defendants' Brief in Support of Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment to the Plaintiff via hand delivery through the Department of Corrections. This alternative method of service is being used due to the COVID-19 emergency.

           *s/ Stephen Moniak*
           **STEPHEN MONIAK**
           Senior Deputy Attorney General