## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONTANA BELL, | No. 3:19-CV-01226 |
| Plaintiff, | (Judge Brann) |
| v. | |
| C.O. FOUNTAIN, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### MARCH 23, 2021

Plaintiff Montana Bell, a state prisoner confined at the State Correctional Institution at Phoenix in Collegeville, Pennsylvania, filed a complaint pursuant to 42 U.S.C. § 1983 alleging Eighth Amendment excessive force and calculated harassment claims as well as related state law claims against Defendants regarding force applied by them to Plaintiff while he was incarcerated at the State Correctional Institution at Camp Hill in Camp Hill, Pennsylvania.[1] Presently before the Court are the parties' cross-motions for summary judgment, which are ripe for adjudication.[2] For the reasons that follow, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment.

---

[1]   Doc. 1-1.

[2]   *See* Docs. 10 (Plaintiff's motion for summary judgment), 19 (Defendants' motion for summary judgment).

# I.    FACTUAL BACKGROUND

While incarcerated at SCI Camp Hill, Plaintiff was temporarily housed in the psychiatric observation cell, referred to as the "POC," because Plaintiff was on suicide watch.[3]  Plaintiff was scheduled to leave the POC and return to his cell.[4] Defendant Officers Fountain, Misti, and Gildea were escorting Plaintiff back to cell D1-13, when Plaintiff inquired about his personal property, which he needed due to a legal deadline.  Officer Fountain told him that his property was in his cell.[5]  When they arrived at his cell, however, Plaintiff saw that his cell was empty without his personal property or a mattress.  Plaintiff froze and stopped, which the officers escorting him described as refusing to enter his cell.[6]

The officers pushed Plaintiff up against a wall and then pushed him into his cell and onto the mattressless bed.[7]  Someone then starts to video the incident from outside the cell, with the interior of the cell clearly visible.

In the video, Plaintiff is initially on the bed of the cell, being held down by two or three correctional officers while another places shackles on him.  About a minute into the video, Plaintiff gets up and moves; it is unclear what kind of movement he makes due to the corrections officers standing in front of him.  He is

---

[3]    Doc. 1-1 at 7; Doc. 22, Ex. B. (video of incident).
[4]    Doc. 22, Ex. B.
[5]    Doc. 1-1 at 7.
[6]    *Id.*; Doc. 22, Ex. B.
[7]    Doc. 1-1 at 7; Doc. 13 at 12 (declaration of inmate Eric Maple).

then pushed into the corner of the cell by three corrections officers, who are joined by a fourth officer.  Plaintiff then repeatedly inquires about the location of his property.  While Plaintiff is held in the corner, he describes his confinement as "use of force."  There is a clear view of the officers, who do not appear to be engaging in any force other than trying to restrain Plaintiff in the corner.

At approximately three minutes into the video, one of the officers is heard to say, "You can stop trying to grab my shirt," to which Plaintiff replies, "I'm not trying to grab" it "my fist is balled up" along with some expletives.  Plaintiff again inquires about his property, to which one officer responds that he does not know where his property is.  Plaintiff, raising his voice, continually asks about his property and tries to move around, while the four corrections officers hold him in the corner of the cell. Plaintiff's demeanor could best be described as agitated.

At approximately four minutes into the video, a lower leg movement is seen along with what appears to be the sole of a shoe.  One of the officers says, "He is kicking through."  Plaintiff is then placed on the bed and the officers appear to be fixing his shackles.  Plaintiff continues to ask about his property while he is restrained on the bed by the officers.  Plaintiff complains that one of the officers is sweating on him.

At approximately six minutes into the video, someone off camera inquires as to what is going on, to which the officer standing outside the cell replies, "He resisted

going into the cell, we had to put him up against the wall, he started kicking them, so they are laying him up against the bed now." Plaintiff is heard in the background describing it as an excessive use of force.

The inquiring officer then enters the cell and explains to Plaintiff that they would like to roll him over and sit him down, to which Plaintiff responds, "Yes, sir." He then sits on the bed. Plaintiff says that his face hurts and requests that photographs be taken of his face and lip. Two women from the medical department appear to attend to Plaintiff, although what is occurring cannot be seen due to the stance of one of the officers next to Plaintiff. Plaintiff continues to inquire about his property with a raised voice and to state his dissatisfaction with being put in an empty cell with "nothing there" including no mattress. Plaintiff sits on the bed while he is attended to by the medical personnel.

At almost ten minutes into the video, Plaintiff states, "How are we doing this LT. You know I'm not going out without a fight, man, y'all already know that. We can be men about this or we can be assholes." One officer replies, "I already told you, I don't have your property." Plaintiff is heard to say something about his property, to which the officer says, "Okay, well, you didn't even give me a chance." Plaintiff continues complaining about how the officer was placing him in the cell with nothing in it, to which the officer replies, "because those are the orders that I have from Psych" and "the orders I have from Psych are that you are in a smock."

Plaintiff admits he is "hyped up," and states that he is not going out "without a fight," because he cannot meet his deadline without his property. Plaintiff asks one of the officers to tell Psych that he needs his property. The officer explains that Plaintiff went to Psych on suicide watch, that he has to follow the orders from Psych, and that Plaintiff is still on a "step down program." Plaintiff continues to loudly demand his property.

Plaintiff then sits quietly for some time. Someone enters the cell to photograph Plaintiff. While he is being photographed, Plaintiff states, "we gonna fight all day [inaudible] get my property."

At a little more than fourteen minutes into the video, an officer advises Plaintiff that he is going to take his shackles and his handcuffs off, and then he is going to try to find Plaintiff's property, and that if Plaintiff is allowed a mattress per Psych, he will get Plaintiff a mattress. Plaintiff continues to complain about his Psych restrictions and demands to be taken back to the POC. The officer explains that even if he returns to the POC for a few days, Plaintiff will still be on a seven day "step down program" after his release from the POC. The officer repeatedly tries to get Plaintiff to cooperate and asks him if Plaintiff will "work with him." Plaintiff finally agrees. Plaintiff's shackles are then removed, the officers exit the cell, and Plaintiff's handcuffs are removed. Plaintiff remains in his cell alone, and

a direction is heard for the officers to watch him for three to five minutes. The video camera remains on Plaintiff's closed cell for a few minutes.

The end of the video consists of the officers and medical personnel in a room, with one of the officers explaining for the camera the incident and why the video was captured. The officer explains that three of the officers were escorting Plaintiff back to a cell after he had been in the POC, when Plaintiff "turned on the officers" and refused to go into his cell. He goes on to state that the officers were able to get Plaintiff into his cell and placed him up against the wall. During the debrief of the incident, the officer asked one of the medical personnel if Plaintiff had any injuries, and she reported that he had an abrasion on his face but was otherwise okay.

## II.   STANDARD OF REVIEW

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.[8]  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.[9]  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[10]  The Court should view the facts in the light most favorable to the non-

---

[8]   Fed. R. Civ. P. 56(c).
[9]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[10]   *Id.* at 250.

moving party and make all reasonable inferences in that party's favor.[11]  When the non-moving party fails to refute or oppose a fact, it may be deemed admitted.[12]

Initially, the moving party must show the absence of a genuine issue concerning any material fact.[13]  Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."[14]  "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla."[15]  "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion.[16]

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'"[17]  Rule 56 mandates the entry of summary judgment against the party who

---

[11]  *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[12]  *See* Fed. R. Civ. P. 56(e)(2); Local R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").

[13]  *See Celotex Corp. v. Carrett*, 477 U.S. 317, 323 (1986).

[14]  *Anderson*, 477 U.S. at 257.

[15]  *Hugh*, 418 F.3d at 267 (citing *Anderson*, 477 U.S. at 251).

[16]  Fed. R. Civ. P. 56(e)(2)-(3).

[17]  *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial.[18]

## III.  DISCUSSION

Plaintiff has brought his Eighth Amendment excessive force and calculated

harassment claims pursuant to 42 U.S.C. § 1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a

violation of a right secured by the Constitution and the laws of the United States

[and] that the alleged deprivation was committed by a person acting under color of

state law."[19]  "The first step in evaluating a section 1983 claim is to 'identify the

exact contours of the underlying right said to have been violated' and to determine

'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[20]

### A.  Excessive Force Claim

The Eighth Amendment prohibits cruel and unusual punishment, such as the

unnecessary and wanton infliction of pain by prison officials, including the

---

[18]  *Celotex Corp.*, 477 U.S. at 322.

[19]  *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

[20]  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

application of excessive force against inmates by prison officials.[21]   The relevant

inquiry in evaluating a claim of excessive force by prison guards is whether the force

used was applied in good faith to maintain or restore discipline, or sadistically or

maliciously to cause harm.[22]   The Supreme Court has set forth a number of factors

that must be considered in evaluating the use of force by prison officials.[23]   These

include the extent of any injury to the prisoner, as well as "the need for application

of force, the relationship between that need and the amount of force used, the threat

reasonably perceived by the responsible officials on the basis of the facts known to

them, and any efforts made to temper the severity of a forceful response."[24]

When considering such claims, the reasonableness of a particular use of force

is often dependent upon factual context and must be "judged from the perspective of

a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[25]

Deference must be given to prison officials' adoption of policies to restore order and

discipline.[26]   Finally, a *de minimus* use of force is not excessive force.[27]

---

[21]   *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).

[22]   *Hudson*, 503 U.S. at 6–7.

[23]   *Whitley*, 475 U.S. at 319.

[24]   *Id.   See also Hudson*, 503 U.S. at 8; *Giles v. Kearney*, 571 F.3d 318, 328 (2009); *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).

[25]   *Graham v. Connor*, 490 U.S. 386, 396–7 (1989).

[26]   *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

[27]   *Reyes v. Chinnici*, 54 F. App'x 44, 48 (3d Cir. 2002) ("There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically.") (concluding that punching an inmate in shoulder who looked as if he were about to spit on the officer was a *de minimus* use of force).   *See also Taylor v. Sanders*, 2012 WL 4104871, at *7 (M.D. Pa.

Because analysis of an Eighth Amendment excessive force claim includes issues of motivation, excessive force claims often turn on factual disputes which cannot be resolved as a matter of law.  Summary judgment in favor of a defendant is thus not appropriate if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain."[28]

That is not the case here.  The undisputed facts and video evidence plainly demonstrate that while physical contact did occur between Defendants and Plaintiff, it was minimal and necessary to restrain Plaintiff, who was very agitated.  Although the beginning of the incident is not recorded, Plaintiff admits that he "froze" and did not enter his cell; he was thus non-compliant to the directions received from Defendants.  There is no dispute that the officers then pushed Plaintiff against the wall and subsequently into his cell, at which point the video starts.  After the video is recording, Plaintiff asserts in his statement of facts that the officers "assaulted" him, "jumping him and beating him maliciously and sadistically to cause serious harm."  Plaintiff's description of events is belied by the video recording, which instead shows Plaintiff in an agitated state, yelling about his property, getting up,

---

Sept. 18, 2012) (concluding that pushes from behind and physical contact on the back without evidence of injury is *de minimus* use of force).

[28]   *Brooks*, 204 F.3d at 106 (quoting *Whitley*, 475 U.S. at 322).

and attempting to kick the officers.  Even Plaintiff admits to "bucking" in his statement of facts.

The video also demonstrates that the officers were simply trying to restrain Plaintiff, while another officer tried to reason with Plaintiff, offering to look for his property and to provide him with a mattress if he was approved to have one.  Plaintiff repeatedly states that he would "go out fighting" and it was not until the end of the video that Plaintiff agrees to cooperate and "work with" the officers, at which point his shackles and handcuffs are removed.  None of the actions on the video could reasonably be described as excessive force; rather, the officers here merely restrained an agitated Plaintiff until he calmed down and agreed to cooperate. Further, the two actions described by Plaintiff before the video was recording could also not be described as excessive force, as Plaintiff admits he stopped and did not enter his cell.  Thus, the force used on Plaintiff to physically put him in his cell was reasonable.  Finally, the Court notes that any injury to Plaintiff was minimal, consisting, at most, of a scrap on his face.  As such, the Court will enter summary judgment on Plaintiff's excessive force claim in favor of Defendants.

### B.    Calculated Harassment Claim

Plaintiff also argues that the use of force and alleged falsification of the misconduct reports violated DOC policy, which, in turn, supports a violation of the Eighth Amendment under a theory of calculated harassment.

The Eighth Amendment protects prisoners from calculated harassment.[29]  "In order for harassment to violate the Eighth Amendment, it must be more than a few isolated incidents; rather, it must be extended and targeted against a particular prisoner."[30]

Any claim Plaintiff wishes to advance regarding calculated harassment fails as a matter of law, as the facts with which he seeks to support it are limited to one isolated event:  the alleged use of force against him and the misconduct reports filed thereafter due to Plaintiff's misbehavior during that incident.  Plaintiff has identified no other facts or incidents that would support a pattern of harassment sufficient to constitute a violation of the Eighth Amendment.[31]  As such, summary judgment is appropriate in Defendants' favor on this issue.

## C.    Remaining State Law Claim Claims

Having determined that summary judgment is appropriate in Defendants' favor on Plaintiff's federal claims brought pursuant to 42 U.S.C. § 1983, the claims

---

[29]  *Hudson v. Palmer*, 468 U.S. 517, 528 (1984).

[30]  *Toolasprashad v. Wright*, No. 02-cv-5473, 2005 WL 3536205, *6 (D.N.J. 2005) (comparing *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984) (denying prisoner few meals did not amount to harassment), and *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185 (D.N.J. 1993) (searching plaintiff three times could not be considered harassment), *with Scher v. Engelke*, 943 F.2d 921 (8th Cir. 1991), *cert. denied*, 503 U.S. 952 (1992) (finding harassment where prisoner's cell was searched ten times in nineteen days)).  *See also Rosa-Diaz v. Rivello*, No. 19-cv-1914, 2020 WL 6481539, at *18 (M.D. Pa. July 10, 2020) (noting singular or isolated incidents insufficient to state a claim for calculated harassment).

[31]  The Court notes that the video of the incident demonstrates that the officers repeatedly stated that they did not know where Plaintiff's personal property, that they were simply following Psych's orders, but that they would look for it if Plaintiff would cooperate.  This would appear to be helpful to Plaintiff rather than harassing.

which remain present issues of state constitutional, statutory, and common law, over which this court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[32]  Specifically, Plaintiff asserts a claim for assault, battery, negligence, and negligent infliction of emotional distress, which he seeks to bring pursuant to the Pennsylvania Political Subdivision Tort Claims Act.[33]  That Act, however, only applies to local agencies and employees, and is thus inapplicable to a claim against state agency employees, such as Defendants.[34]  To the extent that Plaintiff would seek to assert his state claims otherwise, the Court will decline to exercise supplemental jurisdiction over them.

"The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."[35]  "The decision to retain or decline jurisdiction over state-law claims is discretionary" and "should be based on considerations of judicial economy, convenience and fairness to the litigants."[36]  Additionally, federal courts should be guided by the goal of avoiding "[n]eedless decisions of state law . . . both as a matter of comity and to promote justice between the parties."[37]  Declining to exercise

---

[32]  There appears to be no diversity of citizenship between Plaintiff and Defendants so jurisdiction under § 1332 cannot lie independently, separate and apart from the federal claims.

[33]  42 Pa. C.S. §§ 8541–8564.  *See* Doc. 1-1.

[34]  *See* 42 Pa. C.S. § 8541 (specifying "local agency or employee").

[35]  28 U.S.C. § 1367(c)(3).

[36]  *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009).

[37]  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

supplemental jurisdiction is especially warranted when the case calls for interpreting a state constitution.[38]  Further, the Third Circuit has recognized that where all federal claims are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.[39]

Because Plaintiff's remaining claims concerns interpretations of Pennsylvania law, and the federal claims have been dismissed before trial, the prudent course is to decline to exercise supplemental jurisdiction over the state law claims.  For these reasons, the Court will dismiss Plaintiff's state law claims without prejudice, for lack of jurisdiction, in accordance with 28 U.S.C. § 1367(c)(1).

## IV.    CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion for summary judgment, and deny Plaintiff's motion for summary judgment.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[38]  *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 963 F. Supp. 395, 408 (D.N.J. 1997).

[39]  *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).  *See also* Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 3567.3 (3d ed.) ("As a general matter, a court will decline supplemental jurisdiction if the underlying [federal question] claims are dismissed before trial").